# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Randee A. Gilliam, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 1:14-cv-00036 (APM) |
| | ) |
| U.S. Department of Justice, *et al.*, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This case is the third in a line of cases recently brought in this court under the Freedom of Information Act ("FOIA") challenging the government's withholding of all documents relating to court-authorized wiretaps in pending drug conspiracy cases in the Western District of Pennsylvania. The first was brought by Anthony Ellis and resolved by Judge Boasberg in *Ellis v. DOJ*, __ F. Supp. 3d__, Civ. No. 13-2056, 2015 WL 3855587 (D.D.C. June 22, 2015). The second was brought by Lamont Wright and resolved by Judge Walton in *Wright v. DOJ*, __ F. Supp. 3d __, Civ. No. 14-272, 2015 WL 4910502 (D.D.C. Aug. 17, 2015). And this case, the third, was brought by Plaintiff Randee Gilliam. All three men are incarcerated at the Northeast Ohio Correctional Center in Youngstown, Ohio. In fact, Gilliam and Wright are co-defendants in the same criminal matter. *See United States v. Randee Gilliam*, 12-cr-00093 (W.D. Pa.). Not coincidentally, all three cases raise almost identical claims and arguments under FOIA.[1] Indeed, Gilliam's and Wright's opposition briefs are, except for their final pages, identical.

---

[1] For reasons that are unclear, the government did not alert the court to the relatedness of this case, *Ellis*, and *Wright*. Nor did it bring either Judge Boasberg's or Judge Walton's rulings to this court's attention. The government would do better in the future to identify such connected cases—even if not technically "related" under the court's rules—to conserve judicial resources.

*Compare Gilliam v. DOJ*, Pl.'s Opp'n, ECF No. 18, *with Wright v. DOJ*, Pl.'s Opp'n, ECF No. 18.

Notwithstanding the substantial overlap among these cases, this court has an independent obligation to consider the merits of the case before it. And, to that end, the court has reviewed all of the briefing and supporting materials submitted by the parties. Ultimately, the court concludes, for the same reasons as those set forth in *Ellis* and *Wright*, that Defendants' motion for summary judgment must be granted. However, as explained below, the court grants Plaintiff's request to amend his complaint to add new FOIA claims, but denies the request insofar as Plaintiff seeks to add claims arising from the alleged illegal intercept of his telephone communications. Additionally, the court denies Plaintiff's motion for sanctions.

## I.    BACKGROUND

On March 29, 2013, Plaintiff Randee Gilliam submitted a FOIA request to Defendant United States Department of Justice ("DOJ") for "a copy of the Title III interception approval letters and all other documents that are a part of the electronic surveillance" for four telephone numbers. Def.'s Mot. for Summ. J., Decl. of Peter Sprung [hereinafter "Sprung Decl."], ECF No. 15-2, ¶ 8.[2] On July 17, 2013, the Criminal Division of DOJ denied the request in its entirety. *Id.* ¶ 14, Ex. I. It advised Plaintiff that, "to the extent responsive records do exist, they are exempt from disclosure" under FOIA Exemption 3 because Title III exempts them from disclosure. *Id.* DOJ's Office of Information Policy affirmed the Criminal Division's invocation of Exemption 3. *Id.* ¶ 19, Ex. N.

On January 7, 2014, Gilliam filed this lawsuit. Compl., ECF No. 1. Even though it had previously refused to search for or produce documents, DOJ conducted a search for records and

---

[2] Gilliam also submitted similar requests, but for one less telephone number, on May 30, 2013, and June 18, 2013. Sprung Decl. ¶¶ 10-11, Exs. E, F.

located 2,300 pages of potentially responsive material.  Sprung Decl., Ex. Q, ECF No. 15-4.  That material included, among other things, Title III applications, agent affidavits, proposed orders, authorization memoranda, and emails among DOJ attorneys concerning the Title III application. *Id.*, Ex. P, ECF No. 15-3.  DOJ moved for summary judgment on September 12, 2014.  *See* Def.'s Mot. Summ. J., ECF No. 15.  With its motion, DOJ produced a 150-page *Vaughn* index, asserting that all potentially responsive documents were exempt under FOIA Exemptions 3, 5, 6, or 7(C). *Id.*, Ex. Q.

## II.    STANDARD OF REVIEW

Most FOIA cases are appropriately resolved on motions for summary judgment.  *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, while a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A non-material factual dispute is insufficient to prevent the court from granting summary judgment.  *Id.*   The moving party must support the assertion that no facts are in dispute by "citing to particular parts of materials in the record, including . . . affidavits or declarations."  Fed. R. Civ. P. 56(c)(1)(A).  In making its determination as to summary judgment, the court must review "[a]ll underlying facts and inferences . . . in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson*, 477 U.S. at 255).

An agency seeking summary judgment in a FOIA case bears the burden of showing that, even with the facts viewed in the light most favorable to the requester, the agency has conducted

a search "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To carry this burden, the agency may submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Production of such an affidavit allows a requester to challenge, and a court to assess, the adequacy of the search performed by the agency. *Id.* These affidavits are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

Summary judgment based on affidavits is not warranted, however, if the affidavits are "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted); *see also Hall v. CIA*, 668 F. Supp. 2d 172, 196 (D.D.C. 2009) ("Courts may permit discovery in FOIA cases where a plaintiff has made a sufficient showing that the agency acted in bad faith.") (citations omitted) (internal quotation marks omitted). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Wright*, 2015 WL 4910502, at *3 (citation omitted) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Reasonableness of DOJ's Search

Gilliam challenges the reasonableness of DOJ's search for responsive materials. Pl.'s Opp'n at 52. To prevail on this issue DOJ must show that it conducted a search reasonably

calculated to uncover all relevant records.  *See Weisberg*, 705 F.2d at 1351.  To meet its burden, DOJ may rely on a detailed affidavit that explains the scope and method of its search.  *See Oglesby*, 920 F.2d at 68.  Here, DOJ has presented a declaration from Peter Sprung, an attorney in DOJ's Freedom of Information Act/Privacy Act Unit, for that purpose [hereinafter "Sprung Declaration"].

The Sprung Declaration explains that DOJ searched two databases for responsive materials:  (1) an Office of Enforcement Operations ("OEO") database used to track prosecutors' requests for Title III intercepts, and (2) the Criminal Division's archived email system. Sprung Decl. ¶ 21.  The Sprung Declaration details why those two databases were selected and how DOJ went about searching them for responsive materials.  *Id.* ¶¶ 22-30.  Based on these representations, the court is satisfied that DOJ's search met its obligations under FOIA.  Therefore, for the same reasons stated in *Wright* and *Ellis*, this court concludes that DOJ conducted a search reasonably designed to identify all responsive records.  *See Wright*, 2015 WL 4910502, at *6-8 (finding that search of OEO database and Criminal Division's email archive system was sufficient to uncover all relevant documents); *Ellis*, 2015 WL 3855587, at *3-5 (same).

The court also rejects Gilliam's specific challenges to the adequacy of the search.  First, his contention that DOJ did not perform a search under the Privacy Act, 5 U.S.C. § 552a, Pl.'s Opp'n at 47, fails.  As explained in *Ellis*, a Privacy Act search is co-extensive with a FOIA search.  *See Ellis*, 2015 WL 3855587, at *5.  Thus, "[i]t follows that since the agency conducted an adequate search under FOIA, it also satisfied the Privacy Act's requirements."  *Id.*

Second, Gilliam contends that DOJ should have searched two other databases—the United States Drug Enforcement Agency's Narcotics and Dangerous Drug Information System and the Executive Office of the United States' Attorneys' Legal Information Office Network Systems. Pl.'s Opp'n at 55-56.  But as Judge Walton explained in *Wright*, an agency is only required to

search systems that are likely to have responsive documents. 2015 WL 4910502, at *5. And, here, Gilliam has offered no specific facts creating a genuine issue as to whether DOJ has withheld responsive documents by searching only the OEO and email databases. *See id.*

Finally, Gilliam challenges DOJ's search because it took place only after he filed suit against the agency. Pl.'s Opp'n at 61. But, as explained in *Ellis*, "the only consequence of this delay would be a finding that Plaintiff constructively exhausted his administrative remedies and therefore was entitled to bring this suit." 2015 WL 3855587, at *4. "As DOJ does not proffer any exhaustion defense here, the point is moot." *Id.*

### B.    FOIA Exemptions

#### 1.    Exemption 3

DOJ invokes FOIA Exemption 3, 5 U.S.C. § 552(b)(3), to withhold the following documents: (1) applications, affidavits of law enforcement agents, and proposed court orders seeking court-authorization to intercept wire communications; (2) action memoranda from OEO to the Assistant Attorney General ("AAG") recommending approval of the prosecutor's intercept requests; and (3) a memorandum from the AAG to OEO approving the prosecutor's requests. Sprung Decl. ¶ 34. Under Exemption 3, an agency may withhold information "specifically exempted from disclosure by statute," so long as the statute, as pertinent here, either "requires [withholding] from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). To justify its withholding under Exemption 3, DOJ relies on two sections of Title III—18 U.S.C. §§ 2518(8)(b) and 18 U.S.C. § 2517—which, according to DOJ, require that the above-listed materials be sealed by a court order.

For the same reasons set forth in *Wright*, 2015 WL 4910502, at *6-7, and *Dorsey v. DEA*, ___ F. Supp. 2d ___, Civ. No. 11–1350, 2015 WL 1431707, at *3 (D.D.C. Mar. 28, 2015), the court concludes that DOJ's invocation of Exemption 3 was proper.   As explained in *Wright*, section 2518(8)(b) on its face requires courts to seal applications and orders granting the Title III intercept application.   *See Wright*, 2015 WL 4910502, at *6.   Plaintiff points out that Title III does not specifically require sealing of authorizing memoranda.   Pl.'s Opp'n at 18.   However, as explained in *Dorsey*, because such records contain the very same information as applications and orders, they too are properly exempted from disclosure under FOIA.   *See Dorsey*, 2015 WL 1431707, at *3; *see also Wright*, 2015 WL 4910502, at *6 (following *Dorsey*).   Thus, the agency here had no choice but to withhold the relevant Title III applications, orders, and authorizing memoranda from Plaintiff, and it did so properly.

Plaintiff's other arguments do not warrant a different conclusion.   First, although as Plaintiff argues, the Sprung Declaration itself does not identify the withheld documents with specificity, Pl.'s Opp'n at 4-5, the Vaughn Index does.   *See* Sprung Decl., Ex. Q.   Thus, DOJ has not, as Plaintiff contends, simply made a boilerplate invocation of Exemption 3.   *See also Wright*, 2015 WL 4910502, at *7.

Second, Plaintiff argues that the documents at issue have entered the public domain and thus are not subject to any FOIA exemption.   *See* Pl.'s Opp'n at 8-13.   But Plaintiff is wrong for the reasons set forth in *Wright*.   *See Wright*, 2015 WL 4910502, at *8.   The transcripts provided by Plaintiff do not show public disclosure of the Title III applications, orders, and authorization memoranda.   *Id.*   Further, Plaintiff's receipt of some of those records through discovery in his criminal case did not place them into the public domain for purposes of FOIA Exemption 3.   *Id.*

(citing *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999) (stating that "a constitutionally compelled disclosure to a single party simply does not enter the public domain").

2.      *Exemption 5*

DOJ invokes FOIA Exemption 5, 5 U.S.C. § 552(b)(5), to justify withholding the same seven categories of documents it withheld in *Wright*.  *Compare* Def.'s Mem., ECF No. 15, at 20 *with Wright*, 2015 WL 4910502, at *9.  Exemption 5 shields disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 has been interpreted to incorporate the three traditional civil discovery privileges—the attorney work product privilege, the deliberative process privilege, and the attorney-client privilege.  *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996).  As was the case in *Wright*, DOJ asserted here both the attorney work product and deliberative process privileges to justify its invocation of Exemption 5.

The court agrees that the seven categories of documents withheld under Exemption 5 were properly withheld as protected attorney work product.  Plaintiff has not contested DOJ's work product assertion and therefore has conceded the issue.  *See Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004); *Day v. D.C. Dep't of Consumer and Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002).  Moreover, even if Plaintiff had contested the issue, as the courts concluded in *Wright* and *Dorsey*, the work product privilege covers the withheld materials.  *See Wright*, 2015 WL 4910502, at *10-11; *Dorsey*, 2015 WL 1431707, at *4 (holding that Title III authorization memoranda were covered by the work product privilege); *see also Wolfson v. United States*, 672 F. Supp. 2d 20, 30 (D.D.C. 2009) (finding that memoranda recommending continued wiretap authorization were protected by attorney work-product privilege).

8

The court also agrees with DOJ that the action memoranda from OEO to the Assistant Attorney General recommending approval of the Title III requests, as well as email messages between the requesting and reviewing prosecutors, are protected under the deliberative process privilege. Def.'s Mem. at 22. Such documents are both "predecisional" and "deliberative," as required to invoke that privilege. *See Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997); *see also Wolfson*, 672 F. Supp. 2d at 30 (finding that memoranda recommending intercept authorization were covered by the deliberative process privilege); *Gov't Accountability Project v. DOJ*, 852 F. Supp. 2d 14, 25-26 (D.D.C. 2012) (holding that emails among prosecutors relating to decision not to prosecute were covered by the deliberative process privilege).[3]

The court is unpersuaded by Plaintiff's effort to pierce these privileges by asserting that DOJ has engaged in race discrimination in its seeking of intercepts in the Western District of Pennsylvania. *See* Pl.'s Opp'n at 28, 36-46. The court agrees with the court in *Wright* that Plaintiff has not offered compelling evidence of wrongdoing to vitiate the privilege invoked by DOJ. *See Wright*, 2015 WL 4910502, at *11.

  *3.*  *Exemptions 6 and 7(C)*

DOJ also invokes FOIA Exemptions 6 and 7(C) to protect against disclosure of a host of personal information about law enforcement personnel and third parties that is contained in the records. Sprung Decl. ¶¶ 46-51; Def.'s Mem. at 24-26. Exemption 6 protects from disclosure information about persons "in personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Moreover, Exemption 7(C) excludes from disclosure "information compiled for law enforcement purposes"

---

[3] DOJ also asserts that the Title III affidavits were shielded by the deliberative process privilege. The court is skeptical of that assertion, given that those affidavits were prepared to secure court-authorized approval of intercepts and thus were not "deliberative."

if it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  As other courts have done, because the documents at issue are plainly law enforcement records, the court here considers only DOJ's invocation of Exemption 7(C).  *See, e.g.*, *Dorsey*, 2015 WL 1431707, at *5 (citing cases).

Exemption 7(C) requires courts to balance an individual's privacy interests against the public's right of access to information in government files.  *See Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1091 (D.C. Cir. 2014).  Here, there can be little doubt that persons named in the documents—DOJ attorneys, law enforcement agents, and others— have a substantial privacy interest.  *See Braga v. FBI*, 910 F. Supp. 2d 258, 267-68 (D.D.C. 2012). Plaintiff attempts to overcome these interests by asserting that there is a substantial public interest in (1) uncovering wrongdoing in how DOJ obtained the intercept authorizations that led to his prosecution and (2) showing a pattern of racial discrimination by DOJ in securing intercept authorizations in the Western District of Pennsylvania.  Pl.'s Opp'n at 37, 39-46.  But these asserted public interests are entirely conclusory and lack an evidentiary foundation to warrant a belief that government impropriety has occurred.  The court therefore affirms DOJ's invocation of Exemption 7(C) to protect the privacy interests of third parties.

### 4.    *Segregability*

Finally, as in *Wright* and *Ellis*, the court concludes that DOJ has satisfied its segregation obligations under FOIA.  *See Wright*, 2015 WL 4910502, at *11; *Ellis*, 2015 WL 3855587, at *7. The documents withheld under Exemption 3 cannot be segregated.  As for the remaining documents that fall under Exemption 5, because the asserted exemption is based on the work product doctrine, segregation is not required.  *See Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005).

### C.      Plaintiff's Motion to Amend

With his opposition to DOJ's motion for summary judgment, Plaintiff sought leave to amend his complaint (1) to add four new causes of action under FOIA and the Privacy Act concerning four other requests for information submitted by him, and (2) to add two new claims against government agencies and officials under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and various statutes for alleged unlawful interception of his private wire communications.   Pl.'s Opp'n at 1-2.   Plaintiff attached a copy of his proposed Amended Complaint to his combined summary judgment opposition and motion to amend.    Pl.'s Opp'n, Ex. A, ECF No. 19-1.[4]  In addition, Plaintiff later filed a Motion for Leave to File a Second Amended Complaint, seeking to add claims against local law enforcement officials regarding their alleged participation in the unlawful intercepts.  Pl.'s Mot. [for] Leave to File Second Am. Compl., ECF No. 26, at 8.

The standard for assessing a motion to amend a pleading is well established.  Under Federal Rule of Civil Procedure 15(b), a "court should freely give leave when justice so requires." Rule 15(b)'s "mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).   "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Id.*  Denying leave to amend is thus an abuse of discretion and "inconsistent with the spirit of the Federal Rules," *id.*, unless the court provides a sufficient reason for so doing, such as "futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous

---

[4] Because Plaintiff does not raise these new allegations to defeat DOJ's pending motion for summary judgment, but instead to add additional, distinct claims, the court does not apply the ordinary rule that "a plaintiff may not amend [his] complaint by making new allegations in [an] opposition brief." *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014).

amendments." *Boyd v. District of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006) (other citation omitted) (citing *Foman*, 371 U.S. at 182).

Heeding Rule 15(b)'s mandate to freely grant leave, the court will permit Plaintiff to amend his complaint to add Counts II through V, which raise new claims under FOIA and the Privacy Act. Though it opposes Plaintiff's motion, DOJ has offered no specific reason for rejecting Plaintiff's new FOIA claims. *See* Def.'s Reply and Opp'n, ECF No. 25, at 24-25 (making argument only as to the *Bivens* claims). Nor is there any apparent reason to do so. The additional claims all relate to FOIA requests distinct from the claim at issue in Plaintiff's original complaint. And Plaintiff did not unduly delay in bringing the new claims. Each of them relates to a FOIA request either finally denied by DOJ or made by Plaintiff in December 2013 or thereafter, *see* Am. Compl. ¶¶ 24, 39, 52, 73, while Plaintiff moved to amend ten months later in October 2014, Pl.'s Opp'n at 1-2. Nor will permitting Plaintiff to amend cause Defendant to suffer any discernable prejudice. DOJ simply will have to defend its actions as to the additional FOIA demands.

The court reaches a different conclusion, however, as to proposed Counts VI and VII. As to those counts, the court will not allow Plaintiff to amend his complaint because adding those claims would be futile. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.") (citations omitted). In both proposed Counts VI and VII, Plaintiff alleges that various federal agencies and individuals unlawfully intercepted his electronic communications "without authorization from the U.S. Attorney General" or his designee. Am. Compl. ¶¶ 99, 110. Such alleged conduct, Plaintiff contends, gives rise to claims for constitutional violations under *Bivens*; for violation of Title III under 18 U.S.C. § 2520; and for

unauthorized publication or use of intercepted communications under 47 U.S.C. § 605. *Id.* ¶¶ 102, 113. These claims would not survive a motion to dismiss for a host of reasons.

Starting with the *Bivens* claims against DOJ and its component parts, Plaintiff has failed to state a claim because no *Bivens* claims may lie against a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Section 2520 likewise does not provide a cause of action against DOJ for a violation of Title III. 18 U.S.C. § 2520 (permitting civil suits for Title III violations against "any person . . . other than the United States").

As for the *Bivens* and the Title III claims against the putative individual defendants, Plaintiff has failed to plead facts sufficient to establish that the individual defendants would not be entitled to qualified immunity. *See Patterson v. United States*, 999 F. Supp. 2d 300, 311 (D.D.C. 2013) (stating that "a plaintiff must allege sufficient facts to establish that the defendants are *not* entitled to qualified immunity" at the motion to dismiss stage). Long ago, our Court of Appeals said that governmental defendants are "entitled to a qualified immunity on both the Fourth Amendment and the Title III claims if they can show that they had reasonable grounds for believing their actions were legal (the 'objective' basis) and that there was no malice or bad faith in either the initiation or the conduct of the wiretapping (the 'subjective' basis)." *Halperin v. Kissinger*, 606 F.2d 1192, 301 (D.C. Cir. 1979) (footnote omitted). More recently, the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), as modified in *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), has expressed the qualified immunity inquiry as a two-step analysis of whether the facts alleged show a violation of a constitutional right and, if so, whether that right was clearly established at the time of the incident. *See Fox v. District of Columbia*, __ F.3d __, No. 14-7042, 2015 WL 4385290, at *2-3 (D.C. Cir. July 17, 2015) (citations omitted).

When, as here, the alleged constitutional violation is of Fourth Amendment protections, *see* Am. Compl. ¶¶ 99, 111,[5] the Supreme Court has held that law enforcement officials who act in good faith on a magistrate-issued warrant are entitled to qualified immunity, except where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'"   *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (footnote omitted) (citation omitted).

Here, Plaintiff's Amended Complaint and the incorporated attachments allege that the individual law enforcement officers obtained and relied upon court-authorized Title III orders to intercept Plaintiff's communications.   *See* Am. Compl. ¶¶ 86-87, 103-104; *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013) ("We may consider attachments to the complaint as well as the allegations contained in the complaint itself."). Plaintiff's Amended Complaint attaches the relevant Title III orders, which are signed by judges of the United States District Court in the Western District of Pennsylvania and which make the requisite findings to support the intercept authorizations.   *See* Am. Compl., Exs. I-2, ECF No. 19-2, at 85-95, 101-12. Thus, Plaintiff faces a high bar to establish that the individual law enforcement officials are not entitled to qualified immunity.   *See Messerschmidt*, 132 S. Ct. at 1245.

He has come nowhere close to overcoming it.   Plaintiff has not averred any facts that would support the inference that a reasonably competent officer would not have relied on the duly authorized interceptions.   He has not, for instance, claimed that the law enforcement officials

---

[5] Plaintiff also claims violations of his First and Sixth Amendment rights.   But the court sees no reason why the qualified immunity inquiry should differ in this context—where the legality of a Title III intercept is at issue—merely because Plaintiff invokes the First and Sixth Amendments as additional alleged constitutional violations.

obtained the intercept orders with false applications or that the orders were somehow deficient on their face.  At most, he alleges that the orders were obtained without authorization from the Attorney General or his authorized agent.  Am. Compl. ¶¶ 99, 110.  But that allegation is flatly contradicted by the orders themselves, which state that the "Application is made pursuant to the authority of a specially designated representative of the Attorney General of the United States." *Id.* Exs. I-2 ¶ 1; I-3 ¶ 1.  The court need not, and does not, treat as true an allegation that is contradicted by documents attached to the complaint.  *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n.4 (D.D.C. 2014) (citation omitted) (internal quotation marks omitted) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").  Mindful of this court's duty "'to weed out' insubstantial *Bivens* suits 'expeditiously,'" *Simpkins v. District of Columbia*, 108 F.3d 366, 370 (D.C. Cir. 1997) (citation omitted), the court has little trouble concluding that Plaintiff's *Bivens* and Title III claims would not survive a motion to dismiss.[6]

Finally, Plaintiff's asserted claims under 47 U.S.C. § 605 also would not survive a motion to dismiss.  That statute permits civil claims for unauthorized publication or use of intercepted communications, "[e]xcept as authorized by chapter 119, Title 18," or, in other words, by Title III. 47 U.S.C. § 605.  The Amended Complaint, however, alleges that a court authorized the contested intercepts under Title III.  *See* Am. Compl. Exs. I-2 ¶ 1; I-3 ¶ 1.  Therefore, Plaintiff's assertions regarding the putative defendants' publication or use of those intercepts fail to state a claim under 47 U.S.C. § 605.

---

[6] There are additional reasons that Plaintiff's *Bivens* and Title III claims would not survive a Rule 12(b)(6) motion. For instance, Plaintiff has failed to aver specific facts supporting the claims as to each individual defendant.  Moreover, the Title III claims are barred by the two-year statute of limitations. *See* 18 U.S.C. § 2520(e); Am. Compl. ¶¶ 88, 105 (alleging that Plaintiff became aware of the alleged illegal intercepts at his arraignment on May 9, 2012, more than two years before he sought to amend on October 27, 2014).  The court does attempt to cover every possible reason for rejecting Plaintiff's *Bivens* and Title III claims.

In summary, Plaintiff shall be permitted to amend his complaint to add the four additional FOIA and Privacy Act claims.  Plaintiff will not, however, be allowed to amend his complaint to add his proposed *Bivens* and statutory claims, as none of them would survive a motion to dismiss.

###     D.      Motion for Sanctions

Finally, Plaintiff asks the court to sanction DOJ and its counsel under Federal Rule of Civil Procedure 11 for alleged failures of timely filing and service.  Pl.'s Mot. for Sanctions, ECF No. 17. Plaintiff's request for sanctions is frivolous.

First, he contends that Defendants did not timely file and serve upon him an Answer to the Complaint by April 25, 2015, as required by court order.  *Id.* ¶ 2; *see* Minute Order, March 26, 2014.  But Defendants did timely file their Answer on April 25, 2014, *see* ECF No. 7, and, as the certificate of service indicates, mailed it to Plaintiff on that same day, *id.* at 5.

Next, Plaintiff argues that Defendants did not timely file and serve him with their Motion for Summary Judgment by September 12, 2014, as required by court order.  Pl.'s Mot. for Sanctions ¶ 3; *see* Minute Order, Aug. 11, 2014.  But Defendants did timely file their Motion for Summary Judgment on September 12, 2014, *see* ECF No. 15, and, as the certificate of service indicates, mailed it to Plaintiff on that same day, *id.* at 35.  The fact that Plaintiff did not actually receive Defendants' motion until September 25, 2014, Pl.'s Mot. for Sanctions ¶ 3, did not make service untimely or violate a court order.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, DOJ's Motion for Summary Judgment is granted.  Plaintiff's Motion to Amend his complaint is granted in part and denied in part.  His Motion for Leave to File a Second Amended Complaint is denied.  Plaintiff's Motion for Sanctions also is denied.

As to the new FOIA counts, DOJ shall file a summary judgment motion on or before October 8, 2015.  Plaintiff shall file his response on or before November 9, 2015.  And DOJ shall file its reply on or before December 2, 2015.

Dated:  September 1, 2015

Amit P. Mehta
United States District Judge