## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RANDEE A. GILLIAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-00036 (APM) |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Before the court is the second round of Plaintiff Randee A. Gilliam's litigation under the Freedom of Information Act ("FOIA") against Defendants the United States Department of Justice ("DOJ"), the United States Drug Enforcement Agency ("DEA"), and other federal agencies and individuals (collectively, "Defendants"). Plaintiff, proceeding pro se, seeks various documents concerning the investigation that led to his conviction for drug trafficking in the United States District Court for the Western District of Pennsylvania. In the first round of this litigation, the court granted summary judgment in favor of Defendants as to Plaintiff's request for documents relating to court-authorized Title III wiretaps. In this second round, the court considers Defendants' renewed Motion for Summary Judgment, which relates to three additional FOIA requests for other investigatory materials. For the reasons explained below, the court grants Defendants' Motion.

## II.   BACKGROUND

Although the court ruled in favor of Defendants as to the sole FOIA claim at issue in the first round of summary judgment briefing, the court permitted Plaintiff to amend his Complaint to advance three additional FOIA claims. *See Gilliam v. U.S. Dep't of Justice*, 128 F. Supp. 3d 134, 143 (D.D.C. 2015). These new claims are set forth in Counts II through IV of his Amended Complaint. Mot. for Leave to File Am. Compl., ECF No. 19, Am. Compl., ECF No. 19-1 [hereinafter Am. Compl.]. In Counts II and III, Plaintiff broadly seeks the disclosure of documents related to search warrants involving Plaintiff and the execution of those warrants. *Id.* ¶¶ 6–50. In both Counts, Plaintiff identifies two search warrants executed on packages purportedly addressed to Plaintiff—one sent via Federal Express ("FedEx") on or about October 5, 2011, and a second sent via United Parcel Service on or about October 18, 2011. *Id.* ¶¶ 6–25; ¶¶ 26–50.[1] In Count IV, Plaintiff seeks all records associated with the seizure of the FedEx package on or about October 5, 2011, including its shipping label. *Id.* ¶¶ 51–52.

Following the Complaint's amendment, the course of this case became somewhat drawn-out. After conducting a search for responsive records, the DEA located 25 responsive pages but invoked a variety of FOIA exceptions to withhold them in their entirety. *See* Defs.' Mot. to Dismiss & Renewed Mot. for Summ. J., ECF No. 32 [hereinafter Defs.' Mot.], at 8–9.[2] Among the exemptions invoked was Exemption 7(A), which permits agencies to withhold records

---

[1] Initially, Plaintiff's FOIA requests sought search warrant records relating to not only him, but also a third party. Both DOJ and the DEA refused to disclose such records because Plaintiff did not produce a waiver or other documentation that would authorize the records' release pursuant to the Privacy Act. *See* Defs.' Mot. to Dismiss & Renewed Mot. for Summ. J., ECF No. 32 [hereinafter Defs.' Mot.], Second Decl. of Peter C. Sprung, ECF No. 32-2, [hereinafter Second Sprung Decl.], ¶ 14; Defs.' Mot., Decl. of Katherine L. Myrick, ECF No. 32-2, at 25–45 [hereinafter Myrick Decl.], ¶¶ 6, 43–44. Plaintiff later withdrew his request for records relating to the third party. Myrick Decl. ¶ 7; Pl.'s Mot. to Oppose, ECF No. 35, at 10–40 [hereinafter Pl.'s Mot. to Oppose], at 5 ¶ 11. Plaintiff does not challenge either agency's refusal to disclose records concerning the third party.

[2] DOJ's Criminal Division advised Plaintiff by letter dated November 4, 2015, that records relating to search warrants would be in the possession of the DEA. Second Sprung Decl. ¶¶ 14, 17.

compiled for law enforcement purposes if their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The DEA cited Plaintiff's then-pending criminal case in the Western District of Pennsylvania as the basis for withholding all 25 pages of responsive material. Defs.' Mot. at 20. In December 2015, Defendants moved for summary judgment as to Counts II through IV, relying in part on Exemption 7(A). *See id.* at 1.[3] Before ruling on Defendants' Motion, however, the court learned that Plaintiff had entered a plea in his criminal case and had not appealed his conviction and sentence. *See* Minute Order, Aug. 23, 2016. That development rendered moot Defendants' reliance on Exemption 7(A). *See id.* (citing *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014)). The court then directed Defendants to notify the court whether they intended to release the withheld records or stand on other exemptions, in whole or in part, given the final resolution of Plaintiff's criminal case. *Id.*

In the course of responding to the court's Order, Defendants discovered 36 pages of responsive material in addition to the 25 pages previously identified. *See* Resp. to the Court's Minute Order, ECF No. 41 [hereinafter Minute Order Resp.]. Defendants informed the court that they had disclosed to Plaintiff six pages in full and 53 pages in part, but withheld two pages in full. Defs.' Supp. Mem., ECF No. 45 [hereinafter Defs.' Supp. Mem.], at 2–3. Defendants then filed a Supplemental Memorandum in support of their Motion for Summary Judgment. *Id.* at 1. In that Memorandum, Defendants reiterated their request for entry of summary judgment in their favor based on (1) the adequacy of their search, and (2) their reliance on various FOIA exemptions and

---

[3] Defendants also moved to dismiss Plaintiff's September 4, 2016, demand for Title III intercept records, which he made while this matter was pending. Defs.' Mot. at 12–14. The court does not construe Counts II through IV to encompass the September 4th request and, therefore, does not address that request. In any event, Defendants would not be required to produce Title III materials for the reasons stated in the court's initial Memorandum Opinion. *See Gilliam*, 128 F. Supp. 3d at 140–41.

3

the Privacy Act, 5 U.S.C. § 552a, to withhold portions of the released pages and two pages in full. *See* Defs.' Supp. Mem. at 2–5. Plaintiff renewed his opposition to Defendants' Motion and asked the court to grant him limited discovery. Pl.'s Mot. to Oppose Defs.' Supp. Mem., ECF No. 47, at 1–6 [Pl.'s Supp. Opp'n]; Pl.'s Mot. to Oppose Defs.' Mot. for Summ. J., ECF No. 35, at 10–40 [hereinafter Pl.'s Opp'n].

At last, the parties' motions are ripe for the court's consideration.

## III.   DISCUSSION

### A.   Adequacy of the Search

The court begins with the adequacy of Defendants' search for responsive records. To warrant entry of summary judgment in its favor on that issue, an agency must show that it conducted a search reasonably calculated to uncover all relevant records. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency may demonstrate the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits that explain the scope and method of the search conducted. *See Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam). Agency affidavits are presumed to be submitted in good faith, and that presumption cannot be rebutted by speculative claims about the existence and discoverability of other documents. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The court is satisfied that Defendants have shown that their search was adequate. DOJ advised Plaintiff that the records he seeks are maintained by the DEA, because it is the agency that led the investigation against him. Defs.' Mot., Second Decl. of Peter C. Sprung, ECF No. 32-2 [hereinafter Second Sprung Decl.], ¶ 17. According to the DEA's affiant, Katherine Myrick, who is the agency's Chief of the Freedom of Information/Privacy Act Unit, the DEA searched its Investigative Reporting and Filing System ("IRFS"), which contains "all administrative, general,

and investigative files compiled by DEA for law enforcement purposes. . . . No other DEA records system was reasonably likely to contain information responsive to Plaintiff's requests." Defs.' Mot., Decl. of Katherine L. Myrick, ECF No. 32-2, at 25–45 [hereinafter Myrick Decl.], ¶ 26. The DEA twice searched IRFS using Plaintiff's name, alias, and other identifying information, once for each request. *Id.* ¶¶ 30, 32. Both searches returned one subject with the name "Randee Allen Gilliam," which prompted the agency's FOIA specialist to contact, after each search, investigative agents in the field. *Id.* In response to Plaintiff's request for records relating to the searches of the FedEx and UPS packages, the DEA identified 13 pages of responsive material. *Id.* ¶ 31. As to his request for documents relating to the seized FedEx package, the DEA identified 12 pages of responsive material. *Id.* ¶ 33.

Later, the DEA would locate 36 more pages of responsive material. *See* Minute Order Resp. at 2.[4] According to a second declaration submitted by Myrick, the DEA located those 36 pages after the court ordered Defendants to reconsider their invocation of Exemption 7(A). Notice of Filing Ex. to Suppl. Defs.' Mem. in Supp. of Mot. for Summ. J., ECF No. 48, Second Decl. of Katherine Myrick, ECF No. 48-1 [hereinafter Second Myrick Decl.], at ¶ 2. Myrick explains that a follow-on search of IFRS resulted in 36 more pages because the initial searches of IRFS concerned only warrants executed on one date—October 18, 2011—even though Plaintiff also had requested records relating to a warrant executed on a different date—October 5, 2011. *Id.* ¶¶ 3–4.[5]

---

[4] Although Plaintiff does not contend that the DEA's disclosure of the second set of responsive documents following the court's August 23, 2016, order constitutes bad faith, the court nevertheless finds that the DEA has not acted in bad faith based on the record presented. *See Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 109 (rejecting the plaintiff's argument that the agency had acted in bad faith by inconsistently reporting the number of responsive documents found and noting that "the agency's cooperative behavior of notifying the court and plaintiff that it had discovered a mistake, if anything, shows good faith").

[5] Plaintiff additionally requested warrant-related information for any searches involving Defendant occurring between December 1, 2011, and March 31, 2012. Myrick Decl. ¶ 7; Second Myrick Decl. ¶ 4. The DEA's search of IFRS turned up no such materials. Second Myrick Decl. ¶ 3.

Plaintiff makes two primary arguments about the adequacy of the DEA's search. First, he contends that the search was inadequate because the DEA did not search the DEA's field office in Pittsburgh, Pennsylvania, where, according to Plaintiff, responsive records likely would be found because that is where the warrants were executed. Pl.'s Opp'n at 23–25. The court disagrees. "[A]n agency need only search the records of a particular field office in those rare situations where red flags point[] to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request." *Dillon v. U.S. Dep't of Justice*, 102 F. Supp. 3d 272, 285 (D.D.C. 2015) (internal quotation marks omitted); *see also Marrera v. U.S. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985) (stating that there is "no requirement that an agency search every division or field office in response to a FOIA request"). Here, the record contains no "red flags" that would overcome the presumption of good faith afforded Myrick's sworn statement that "the IRFS is the only DEA records system that would contain criminal investigative records responsive to Plaintiff's requests." Myrick Decl. ¶ 26; *see Dillon*, 102 F. Supp. 3d at 285. Plaintiff's speculation that records *might* exist in a field office does not render the DEA's search inadequate. *See SafeCard Servs.*, 926 F.2d at 1200.

Second, Plaintiff asserts that the DEA's search could not have been adequate because certain records relating to the search warrant executed on October 5, 2011—namely, a signed search warrant, a signed inventory return, and original computer-generated documents from FedEx—were not among the documents disclosed to him. Pl.'s Supp. Opp'n at 3–5. Plaintiff is incorrect. "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Indeed, "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it." *Miller v. U.S. Dep't of Justice*, 779 F.2d 1378, 1385 (8th Cir. 1985). "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde*, 315 F.3d at 315. For that reason, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id.* Here, the DEA searched the computer database that most likely would identify responsive records. *See* Myrick Decl. ¶ 26. Nothing more is required. Accordingly, the DEA's non-production of specific records that Plaintiff expected to receive does not render its search inadequate.

  **B.**  **Exemptions**

Although Defendants have withdrawn their invocation of Exemption 7(A) as a ground for withholding all records, they continue to assert other Exemption 7 grounds for redacting portions of the released records and not disclosing two records in full.

To begin, Defendants rely on Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), to withhold "the identities of DEA Special Agents . . . and other law enforcement officers." Defs.' Mot. at 22.[6] The D.C. Circuit has adopted a "categorical rule [under Exemption 7(C)] permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998) (describing the public interest as "insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and

---

[6] To withhold the names of DEA Special Agents, Defendants also invoke Exemption 7(F), which protects against disclosure of information that "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F). *See* Defs.' Mot. at 26–27. The court also finds Exemption 7(F) justifies withholding the names of law enforcement officers.

7

shows that the information sought is necessary in order to confirm or refute that evidence" (internal quotation marks omitted)). Here, Plaintiff claims that the DEA agents acted unlawfully in executing the search warrants in October 2011—a claim that is based on nothing more than the absence of an original, signed warrant from the DEA's production to him. Pl.'s Opp'n at 30–33. That argument and factual proffer comes nowhere close to the "compelling evidence" needed to satisfy the exception to Exemption 7(C)'s categorical rule against disclosure.[7]

Next, Defendants assert Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), to protect the identity of confidential sources or information furnished by confidential sources. Defs.' Mot. at 23–24. "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Roth v. United States*, 642 F.3d 1161, 1184 (D.C. Cir. 2011). "If the [agency's] production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the [agency] is entitled to withhold the records under Exemption 7(D)." *Id.* at 1184–85 (quoting 5 U.S.C. § 552(b)(7)(D)). In this case, Myrick explains that some of the responsive information concerns "coded" informants who continue to cooperate with the DEA "by written signed agreement; they are expressly assured confidentiality in their identities and the information they provide to DEA." Myrick Decl. ¶ 55. Based on that representation, Defendants easily meet Exemption 7(D)'s "reasonable expectation" standard. *See Adionser v. U.S. Dep't of Justice*, 33 F. Supp. 2d 23, 27 (D.D.C. 2014) (holding that information relating to the DEA's "coded" informants is protected by Exemption 7(D)); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 212 (D.D.C. 2010) (same). Plaintiff contends that Exemption 7(D) is inapplicable because the authentic FedEx shipping label he requested would not disclose any confidential source's identity.

---

[7] The court also notes that the trial court in the Western District of Pennsylvania rejected Plaintiff's motion to suppress evidence. *See United States v. Gilliam*, Nos. 12-93, 13-235, 2015 WL 5178197 (W.D. Pa. Sept. 4, 2015), at *9–11.

Pl.'s Opp'n at 37. While that may be true, Plaintiff broadly sought all records relating to the October 2011 searches, not just the FedEx label. The court has no reason to doubt that such a sweeping request might include information relating to confidential sources.

Finally, Defendants invoke Exemption 7(E) to withhold what are known as G-DEP and NADDIS numbers from investigative reports. Myrick Decl. ¶¶ 56–57.[8] G-DEP—an acronym for "Geo Drug Enforcement Program"—numbers are assigned to all DEA cases at the time the case file is opened. Those numbers correlate to information such as the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation, and the suspected location and scope of criminal activity. *Id.* ¶¶ 39, 58. NADDIS—an acronym for DEA's Narcotics and "Dangerous Drugs Information System"—numbers provide a means for "finding out not only drug violator information about the subject, but also personal information about the violator, relatives, and any third parties identifiable with the violator." *Id.* ¶¶ 28, 59. According to Myrick, if these numbers are disclosed it could adversely impact the DEA's investigative activities and enable suspects to avoid detection. *Id.* ¶ 58. Given the "relatively low bar for the agency to justify withholding" information under Exemption 7(E), *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), the court finds that the DEA's withholding of G-DEP and NADDIS numbers under Exemption 7(C) was proper. *See Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 29 (D.D.C. 2012) ("Because the NADDIS numbers were created for a law enforcement purpose and their disclosure may disclose techniques and procedures for law enforcement investigation, this Court finds that they are properly withheld under Exemption 7(E).").

---

[8] Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

## C. Segregability

The court also is satisfied that Defendants met their obligation to disclose any reasonably segregable information. Having reviewed the documents released to Plaintiff, *see* Minute Order Resp., Ex. A, ECF No. 41-1; Minute Order Resp., Ex. B, ECF No. 41-2, it is apparent that Defendants conducted a line-by-line inquiry to determine whether any non-exempt portions of the records could be released. That observation, coupled with Myrick's statements in both declarations that all responsive material "was examined to determine whether any reasonably segregable information could be released," *see* Myrick Decl. ¶ 67; *see also* Second Myrick Decl. ¶ 20, satisfies the agencies' duty of segregability.

## D. Discovery Request

Lastly, Plaintiff asks the court to allow him to take discovery to obtain original records from FedEx and "to submit an interrogatory request" to a Pennsylvania state court in order "to determine the authenticity of the material submitted by the DEA." *See* Pl.'s Mot. for Continuance to Take Discovery, ECF No. 35, at 1–5 [hereinafter Pl.'s Mot. for Discovery], ¶¶ 4, 6–7; Pl.'s Supp. Opp'n at 4; Pl.'s Second Mot. for Continuance to Take Discovery, ECF No. 47, at 9–11.[9] The court rejects that request, as Plaintiff has offered only pure conjecture and no actual evidence of bad faith on the part of Defendants to support his taking of discovery. *See Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).

---

[9] Pin cites to Plaintiff's Second Motion for Continuance to Take Discovery refer to ECF-generated page numbers.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted, and Plaintiff's two motions for continuances to take discovery are denied.

A separate order accompanies this Memorandum Opinion.

Dated: February 22, 2017

Amit P. Mehta
United States District Judge